IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DAMION GREEN,**

      **Plaintiff,**

v.                                                    **Civil Action No. 1:14cv157**
                                                           **(Judge Keeley)**

**MARVIN C. PLUMLEY, Warden,**
**KENNETH WINGFIELD, Sergeant,**
**JAMES BARKLEY, Corporal,**
**BOBBY SHAFFER, Correctional Officer II,**
**RICHARD GSELL, Correctional Officer II,**
**RICHIE CORLEY, Doctor,**
**JEREMY ARBOGAST**

      **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On September 16, 2014, Plaintiff, an inmate incarcerated at Huttonsville Correctional Center ("Huttonsville") in Huttonsville, West Virginia, initiated this case by filing a *pro se* civil rights complaint against the above-named defendants pursuant to 42 U.S.C. §1983, alleging deliberate indifference, medical negligence, and excessive force. (ECF No. 1). Plaintiff also filed a Motion to Appoint Counsel and a Motion for Leave to Proceed in Forma Pauperis. (ECF Nos. 5 , 8). By Order entered on September 22, 2014, Plaintiff's Motion to Appoint Counsel was denied, however, that same day, he was granted permission to proceed as a pauper. (ECF Nos. 8 , 9).

Also on September 22, 2014, the undersigned conducted a preliminary review of the complaint and determined that summary dismissal was not appropriate. (ECF No. 10). Accordingly, an Order to Answer was entered, and summonses were issued for each defendant. (Id.).

On October 17, 2014, Defendant Richie Corley filed a Motion to Dismiss. (ECF No. 21). On

October 20, 2014, Defendants Warden Marvin C. Plumley, Sergeant Kenneth Wingfield, Corporal James Barkley, Officer Bobby Shaffer, Officer Richard Gsell, and Sergeant Jeremy Arbogast jointly filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment. (ECF No. 24). Because Plaintiff is proceeding *pro se*, the Court issued a Roseboro Notice on October 21, 2014. (ECF No. 28). On December 5, 2014, Plaintiff responded to the Motion to Dismiss or, in the alternative, Motion for Summary Judgment. (ECF No. 31). On December 12, 2014, Defendants Plumley, Wingfield, Barkley, Shaffer, Gsell and Arbogast filed a reply to Plaintiff's response. (ECF No. 32). On January 26, 2015, Plaintiff responded to Defendants' reply. (ECF No. 34).

Accordingly, this matter is now ripe for a report and recommendation pursuant to LR PL P 2.

## II. Contentions of the Parties

### A. The Complaint

In the complaint, it appears that Plaintiff asserts claims of deliberate indifference, medical negligence, and excessive force. On May 6, 2014, Plaintiff alleges that he experienced a severe migraine as the result of an earlier seizure. (ECF No. 1 at 7). For his migraine, Plaintiff was provided Motrin. (Id.). Later in the afternoon, "[b]etween 4:30 or 5:00 pm," Plaintiff alleges that he told correctional officers that he was unable to eat because he was too weak to get out of his bed. (Id.).

Plaintiff further alleges that around 7:00 p.m., Officer Houston and Officer Gsell ordered him to "cuff up" so that he could be examined by a nurse. (Id.). At this time, Plaintiff claims that he was still "in shock from the seizure" and unable to move. (Id.). Plaintiff claims that a nurse told officers that he "showed signs of a seizure" and that he was cold to touch and experiencing cold sweats. (Id.).

2

Soon after, Plaintiff contends that a nurse called for him to be moved to an observation cell. (Id. at 8). Plaintiff told Officer Houston that he was personally unable to move to another cell and needed help moving. (Id.). Plaintiff contends that Officer Gsell stated that "he did not have the time to deal with . . . [Plaintiff's] games" and Sergeant Arbogast threatened to make Plaintiff "move faster" with mace spray. (Id.). Plaintiff contends that Sergeant Arbogast "made it very clear, by his actions and intentions . . . to do harm to [him]." (Id.).

As instructed, Plaintiff claims that he "made it to [his] cell door" and was handcuffed. (Id.). Next, Plaintiff alleges that he was dragged by his arms by Officer Gsell, Officer Bobby Shaffer, and Corporal James Barkley to the observation cell. (Id.). Once inside the observation cell, Plaintiff alleges that Officer Gsell instructed him to lie down on the bed. (Id.). However, Plaintiff was still handcuffed. (Id.). Plaintiff alleges that he "went toward the bed as . . . told," but the officers "starting yelling and [trying] to pull [his] arms [through] the beam [hole] of the door." (Id.). Plaintiff claims that the officers were trying to injure him, and, as a result of the "yanking and pulling," he cut his arm. (Id.).

Once the officers noticed that his arm was bleeding, Plaintiff alleges they released him and sprayed him with "chemical agents." (Id. at 9). Next, Plaintiff claims that Sergeant Wingfield, Officer Gsell, Officer Shaffer, and Corporal Barkley rushed into the cell, knocked Plaintiff on the ground, twisted his wrists, and dragged him to the shower. (Id.). Plaintiff states that the officers prohibited him from seeing a nurse about the cut on his arm until they noticed that the cut "was very deep." (Id.).

3

Next, Plaintiff states that he was examined by a nurse. (Id.). Plaintiff alleges that Nurse Scott told him that the cut needed stitches, however, he would have to wait until the next morning for a doctor. In the interim, the nurse bandaged his arm. (Id.).

The next day, Plaintiff claims he was told that the prison doctor refused to see him. Plaintiff contends that "none of this would [have] occurred . . . if it wasn't for Dr. Rich Corley."[1] (Id. at 10). Plaintiff cites an earlier episode on April 10, 2014, when Defendant Corley examined plaintiff during a follow-up medical appointment. (Id.). During the appointment, Plaintiff contends that Defendant Corley accused him of faking seizures and told him that he could not help him anymore. (Id. at 11). Instead, Plaintiff alleges that Defendant Corely encouraged him to "keep reading [his] Bible, be honest and don't cuss." (Id.) After this episode, Plaintiff contends that the medical staff refused to help him and either "walked away" or accused him of faking symptoms. (Id. at 11-12).

Plaintiff alleges that he has had several seizures without any medical attention. Additionally, Plaintiff claims that he has had bowel issues and swelling in his feet. (Id.). Plaintiff alleges that none of these conditions have been addressed by medical staff because of Defendant Corley. Further, because he was "yanked and pulled," by officers on May 6, 2014, Plaintiff claims that he suffered a two inch cut on his right arm that was "bone deep." (Id. at 13).

Plaintiff seeks injunctive relief in the form of an Order directing Defendants to "cease their physical violence." (Id.). Additionally, Plaintiff seeks compensatory and punitive damages from each Defendant. (Id..).

**B. Defendant Corley's Motion to Dismiss**

---

[1] In Defendant Corely's Memorandum in Support of his Motion to Dismiss, (ECF No. 22), Defendant Corely contends that he is not a doctor at Huttonsville Correctional Center, but rather a physician assistant and nurse practitioner. (ECF No. 25 at 1).

4

Defendant Corley contends that Plaintiff's complaint should be dismissed because his allegations fail to "support a claim for relief under the Eight Amendment for ineffective medical assistance due to deliberate indifference." (ECF No. 25 at 8). Further, Defendant contends that the Court should dismiss any state law claims for medical malpractice because of "plaintiff's failure to comply with the requirements of the West Virginia Medical Professional Liability Act . . . ." (Id. at 9).

**C. Defendants Warden Plumley, Sergeant Wingfield, Corporal Barkley, Officer Shaffer, Officer Gsell, and Sergeant Arbogast's Motion to Dismiss/Summary Judgment**

Defendants argue that Plaintiff's complaint should be dismissed, or summary judgment be granted, "[b]ecause [p]laintiff has failed to exhaust his administrative remedies . . . ." (ECF No. 25 at 9).

**D. Plaintiff's Response**

In response, plaintiff reiterates his claims made in his original complaint. (ECF No. 31).

**E. Defendants Warden Plumley, Sergeant Wingfield, Corporal Barkley, Officer Shaffer, Officer Gsell, and Sergeant Arbogast's Reply**

Defendants reiterate their previous arguments and also contend that Plaintiff's complaint should be dismissed because he "provided no counter arguments in opposition to [d]efendants' Motion and because [p]laintiff has failed to respond in a timely fashion to [d]efendants' Motion . . . ." (ECF No. 32 at 5).

**F. Plaintiff's Response**

Plaintiff filed an additional response, or surrebuttal, to Defendants' reply. However, under the local rules of this District, a surrebuttal memoranda may not be filed and will not be considered by the undersigned. LR PL 11.4.

5

### III. Standard of Review

#### A. Motion to Dismiss

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. However, in Bell Atlantic Corp v. Twombly, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id. at 555.

The Supreme Court elaborated on its holding in Twombly. In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), a civil rights case, the Court wrote:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [Twombly, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556. * * *
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1949-50.

#### B. Motion for Summary Judgment

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (2010). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Kentucky Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

Rule 56(c)(1) of the Federal Rules of Civil Procedure provides that:

A party asserting that a fact cannot be or is genuinely disputed, must support the assertion by:

>  (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>  (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Subsection (e) of Rule 56 provides that, if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may: (1)

give the parties an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and undisputed supporting materials show that the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). However, the party opposing the motion may not rely upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Sprenkle v. Hartford Life Ins. Co., 84 F. Supp. 2d 751 (N.D. W. Va. 2000).

## IV. Analysis

### A. Marvin Plumley

In his complaint, Plaintiff names Marvin C. Plumley in his capacity as the Warden of Huttonsville Correctional Center. However, Plaintiff does not allege that Defendant Plumley was personally involved in the violation of his constitutional rights. Instead, Plaintiff appears to name him only in his official capacity.

There is no *respondeat superior* liability under § 1983. See Monnell v. Department of Social Services, 436 U.S. 658 (1978); see also Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1997).

Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge, supra. Nonetheless, when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under § 1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F.2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994).[2]

Because Plaintiff fails to allege any personal involvement on the part of Defendant Plumley[3] and does not make any allegations which reveal the presence of the required elements for supervisory liability, Plaintiff fails to state a claim against Defendant Plumley, and he should be dismissed as a defendant in this action.

**B. Failure to Exhaust**

---

[2] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Shaw, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

[3] To the extent that the plaintiff may be asserting that Defendant Plumley was deliberately indifferent to his needs by denying his administrative grievances, that claim is without merit because that is not the type of personal involvement required to state a claim. See Paige v. Kuprec, 2003 W.L. 23274357 *1 (D.Md. March 31, 2003).

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. §1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. §1997(e)(a). Exhaustion as provided in §1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). An action under 42 U.S.C. §1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes"[4] and is required even when the relief sought is not available. Booth, 532 U.S. at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added). In addition, the Supreme Court has stated that "we will not read futility or other exceptions into statutory exhaustion requirements . . ." See Booth 532 U.S. at 741, n. 6. The PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons;" (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case;" and (3) to "reduce the quantity and improve the quality of prisoner suits." Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006). Pursuant thereto, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Id. at 2387 (emphasis supplied). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. See Id. at 2393.

The WVDOC has established a three level grievance process for prisoners to grieve their complaints in an attempt to resolve the prisoners' issues. The first level involves filing a G-1

---

[4] Porter, 534 U.S. at 524.

Grievance Form with the unit manager. If the inmate receives no response or is unsatisfied with the response received at Level One, the inmate may proceed to Level Two by filing a G-2 Grievance Form with the warden/administrator. Finally, the inmate may appeal the Level Two decision to the Commissioner of the Division of Corrections.

On May 29, 2014, plaintiff filed a Level One grievance with his unit manager alleging that he filed an earlier grievance on May 20, 2014, against Sergeant Wingfield, Officer Gsell, and Officer Shaffer "for cruel and unusual punishment," however, he never received a response from the "unit team or warden." (ECF No. 1-1 at 1). On May 30, 2014, the unit manager responded to Plaintiff that "[t]here is no record of [Plaintiff] filing a grievance on May 20, 2014, against Sergeant Wingfield, Officer Gsell, or Officer Shaffer." Id. Furthermore, an affidavit by Defendant Plumley states that the only grievances filed by Plaintiff between May 6, 2014, and May 27, 2014, were two grievances not related to the alleged excessive force described in Plaintiff's complaint. (ECF No. 25-1 at 1-2).

Under WVDOC guidelines, "[a]n inmate may grieve only one (1) issue or complaint per form and...the issue must directly pertain to the inmate filing the grievance." WVDOC Policy Directive 335.00. (ECF. No. 25-2 at 6) Plaintiff's May 29, 2014, grievance was a complaint concerning the non-responsiveness of Huttonsville officials, not about any alleged excessive force that occurred on May 6, 2014. See (ECF No. 1-1 at 1). In fact, in Plaintiff's May 29, 2014, Level One grievance, he never mentions an incident occurring on May 6, 2014, and only mentions three of the now seven named defendants. Id. Moreover, had Plaintiff filed a grievance on May 20, 2014, he would have received a copy for his records before it was submitted. (ECF No. 25-2 at 7). Furthermore, if the unit manager had failed to answer or reject his alleged May 20, 2014 grievance within five days, Plaintiff was permitted to treat the non-response as a denial and was free to file

11

his G-2 grievance with the Warden. (ECF No. 25-2 at 6-7).

Here, Plaintiff clearly has failed to exhaust his administrative remedies. Even if Plaintiff's May 29, 2014, grievance could be interpreted as related to an excessive force claim, based on the affidavit by Defendant Plumley and the record, the grievance nevertheless would be untimely. Under WVDOC guidelines, "[a]ny inmate may file a grievance utilizing a grievance form . . . within fifteen (15) days of any occurrence that would cause him/her to file a grievance." WVDOC Policy Directive 335.00. The alleged incident of excessive force occurred on May 6, 2014. However, the grievance documented above and attached to the complaint was not initiated until May 29, 2014. (ECF No. 1-1 at 1). Accordingly, it is outside the time limits established by the WVDOC inmate grievance procedure, and cannot serve to exhaust his administrative grievance. Accordingly, because the undisputed evidence establishes that Plaintiff failed to exhaust his administrative grievances with respect to excessive force on the part of Defendants Wingfield, Barkley, Shaffer, Gsell, and Arbogast, his complaint as to said Defendants should be dismissed without prejudice.

**C. Deliberate Indifference to Serious Medical Needs**

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating

treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[3]

---

[3] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997). A pituitary tumor is a serious medical condition. Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998). A plate attached to the ankle, causing excruciating pain and difficulty walking and requiring surgery to correct it is a serious medical condition. Clinkscales v. Pamlico Correctional Facility Med. Dep't., 2000 U.S. App. LEXIS 29565 (4th Cir. 2000). A tooth cavity can be a serious medical condition, not because cavities are always painful or otherwise dangerous, but because a cavity that is not treated will probably become so. Harrison v. Barkley, 219 F.3d 132, 137 (2nd Cir. 2000). A prisoner's unresolved dental condition, which caused him great pain, difficulty in eating, and deterioration of the health of his other teeth, was held to be sufficiently serious to meet the Estelle standard. Chance v. Armstrong, 143 F.3d 698, 702 - 703 (2nd Cir. 1998). A degenerative hip condition that caused a prisoner "great pain over an extended period of time and . . . difficulty walking" is a serious condition. Hathaway v. Coughlin, 37 F.3d 63, 67 (2nd Cir. 1994). Under the proper circumstances, a ventral hernia might be recognized as serious. Webb v. Hamidullah, 281 Fed. Appx. 159 (4th Cir. 2008). A twenty-two hour delay in providing treatment for inmate's broken arm was a serious medical need. Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978). A ten-month delay in providing prescribed medical shoes to treat severe and degenerative foot pain causing difficulty walking is a serious medical need. Giambalvo v. Sommer, 2012 WL 4471532 at *5 (S.D.N.Y. Sep. 19, 2012). Numerous courts have found objectively serious injury in cases involving injury to the hand, including broken bones. See, e.g., Lepper v. Nguyen, 368 F. App'x. 35, 39 (11th Cir. 2010); Andrews v. Hanks, 50 Fed. Appx. 766, 769 (7th Cir. 2002); Bryan v. Endell, 141 F.3d 1290, 1291 (8th Cir. 1998) Beaman v. Unger, 838 F.Supp. 2d 108, 110 (W.D. N.Y. 2011); Thompson v. Shutt, 2010 WL 4366107 at *4 (E.D. Cal. Oct. 27, 2010); Mantigal v. Cate, 2010 WL 3365735 at *6 (C.D. Cal. May 24, 2010) *report and recommendation adopted,* 2010 WL 3365383 (C.D. Cal. Aug. 24, 2010); Johnson v. Adams, 2010 WL 1407787 at *4 (E.D. Ark. Mar. 8, 2010) report and recommendation adopted, 2010 WL 1407790 (E.D. Ark. Mar. 31, 2010); Bragg v. Tyler, 2007 WL 2915098 at *5 (D.N.J. Oct. 4, 2007); Vining v. Department of Correction, 2013 U.S. Dist. LEXIS 136195 at *13 (S.D.N.Y. 2013)(chronic pain arising from serious hand injuries satisfies the objective prong of Eighth Amendment deliberate indifference analysis). A three-day delay in providing medical treatment for an inmate's broken hand was a serious medical need. Cokely v. Townley, 1991 U.S. App. LEXIS 1931 (4th Cir. 1991).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)). Here, even assuming that Plaintiff has a serious medical condition, he fails to state a viable Eight Amendment claim, and his complaint as it relates medical care should be dismissed for the reasons more fully discussed below.

**Defendant Corley**

14

The only "medical" defendant named by Plaintiff is an individual who he identifies as Richie Corley.[4] The allegations made against Defendant Corley are very limited. After identifying him as a doctor at Huttonsville, who heads the medical staff that oversees inmates at Huttonsville, he appears to allege that Defendant Corley refused to see Plaintiff after April 10, 2014 (ECF No. 1 at 11), and that none of what he believes to be improper medical attention following the May 6, 2014 altercation with correctional officers would have occurred if it had not been for "Dr. Rich Corley." (ECF. No. 1 at 10).

Defendant Corley argues that Plaintiff falls "short of stating sufficient facts to support a claim for relief under the Eighth Amendment for ineffective medical assistance due to deliberate indifference." (ECF No. 21 at 8). The undersigned agrees.

First, the undersigned notes that while Plaintiff refers to "Richie Corley" as a doctor. Mr. Corley is, in fact, a physician's assistant. Second, as previously noted, Plaintiff makes only two specific allegations against Defendant Corley. First, he alleges that on April 10, 2014, he said to Plaintiff: "Don't lie, don't fake, be honest. My staff members feel you are faking seizures." (ECF. No. 1 at 10). Plaintiff alleges that Defendant Corley made it very clear he could not help him anymore. Next, after setting forth the events of May 6, 2014, when the altercation with correctional officers occurred, he alleges that none of this would have happened were it not for "Dr. Rich Corley." (ECF. No. 1 at 10). However, with respect to his medical care that day, Plaintiff recitation of the facts establishes that Nurse Scott came to his cell, took his vital signs and observed that he

---

[4]The undersigned notes that a close examination of the exhibits of record tend to establish that Plaintiff did not exhaust his deliberate indifference claim as to Defendant Corley. The only grievance which appears to have been submitted by Plaintiff regarding medical care does not name Defendant Corley and does not mention any of the allegations raised in Plaintiff's complaint with respect to Defendant Corley. (ECF. No. 25-1 at 4). However, failure to exhaust is an affirmative defense, and because Defendant Corley did not raise the same, the undersigned has deemed it waived.

showed signs of having had a seizure. In addition, she asked that he be moved to an observation cell and, after his arm was cut in the "altercation," she advised him that he needed stitches, which would have to wait until the next day, and bandaged his arm "the best that she could." (ECF No. 1 at 10). Accordingly, there is simply no allegation that supports a claim that Defendant Corley violated Plaintiff's Eighth Amendment rights by being deliberately indifference to any serious medical condition. At best, it would appear that Plaintiff may disagree with care that was provided to him, and/or believe that additional care was required. However, a mere disagreement between an inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Furthermore, so long as the medical treatment given is adequate, the fact that an inmate would have preferred a different type of care does not constitute deliberate indifference. Chance v. Armstrong, 143 F.3d 698, 703 (2nd Cir. 1998).

The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court. Weller v. Dept. of Social Services, 901 F.2d 387 (4th Cir. 1990). Therefore, after a review of the record, Plaintiff's deliberate indifference claim against Defendant Corley should be dismissed.

**C. Medical Negligence**

In his grievance, Plaintiff states that a cut on his arm, allegedly received on May 6, 2014, when officers moved him to an observation cell, was an open wound and needed stitches. (ECF No. 1-1 at 3). However, instead of receiving stitches, plaintiff contends that the original cut was bandaged by a nurse. (ECF No. 1 at 9).[5]

---

[5]It would further appear that Health Services responded to Plaintiff's grievance regarding his wound as follows: "An older wound cannot be stitched. Your are picking at your wound and will not leave the dressing on. The doctor wrote you new orders on May 19, 2014." (ECF. No. 1-1 at 3).

16

To the extent that Plaintiff may be seeking to establish a medical negligence claim, he must comply with West Virginia law and establish that:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3.

When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-606 (2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

> **§55-7B-6**. Prerequisites for filing an action against a health care provider; procedures; sanctions.
>
> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
>
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The

17

person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the Rules of Civil Procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatary prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp. 2d 805, 806-807 (N.D. W.Va. 2004).

With regard to the appropriate standard of care, Plaintiff has not sustained his burden of proof. Plaintiff does not assert, much less establish, the standard of care for his arm laceration. Further, this is not a case of alleged malpractice so obvious that it entitles Plaintiff to the common knowledge exception of W.Va. Code §55-7B-6(c). Thus, any possible claims as to medical negligence must be dismissed.

### V. Recommendation

For the foregoing reasons, the undersigned recommends that Defendant Corley's Motion to Dismiss, (ECF No. 21), be **GRANTED**, and the Complaint as it relates to Defendant Corley be **Dismissed with Prejudice**. In addition, the undersigned recommends that the Complaint as to Defendant Plumley be **Dismissed with Prejudice**. Finally, the undersigned recommends that Defendants Warden Plumley, Sergeant Wingfield, Corporal Barkley, Officer Shaffer, Officer Gsell, and Sergeant Arbogast's Motion to Dismiss or, in the alternative, Motion for Summary Judgment , (ECF No. 24), be **GRANTED**, and the Complaint as it relates to Defendants Wingfield, Barley, Shaffer, Gsell, and Arbogast be **Dismissed without Prejudice** for failure to exhaust administrative remedies.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those

portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide a copy to all counsel of record via electronic means.

DATED: 7-21-2015

_____
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE